## Williams v. Commonwealth.

December 19, 1947.

E. R. Denney, Judge.

W. N. Flippin, J. E. Caylor and Viley O. Blackburn for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Affirming.

We are presented with an appeal from a conviction of murder, with the death penalty imposed. There was no defense offered in the trial and the attorneys representing the accused, under appointment of the court, do little more than submit the case that we may examine the record for error. We have done so and find it exceptionally free.

When her son and his wife returned home about half past ten o'clock one Sunday evening in September last, his mother, Mrs. Ada Hughes, was not in. She had not been seen by the neighbors. Her purse was found near the house and some of her clothing farther back in the yard and orchard. Mrs. Hughes was eventually found over an old wire fence in an alley back of the premises, with her head terribly bludgeoned, and the stock of a rifle near by. She remained unconscious until her death the next evening. She had been raped.

The rifle had been stolen from the home of Chester Ingram, a colored man, during his absence that afternoon. The sister and parents of the accused, Luther Williams, a Negro, testified that he had come home in the late afternoon with the rifle, looking for some cartridges, saying that he was going squirrel hunting. Williams later tried to sell it to two different persons, telling one of them that he had to have some whiskey. Afterward he was seen going toward Mrs. Hughes' home with the rifle, and later coming from that direction without it. He went back to his home with a little blood on his shirt and told his sister that Chester Ingram's nose had bled on it. She declined to burn the shirt as he requested, saying that she would wash it out in the morning; but he insisted, telling her and his parents that "something had happened and they would

see this blood and think he had done it and lay it on him." He then burned the shirt in the cooking stove.

Police officers in their investigation found Williams at his home and learned of these circumstances. He was taken to the police station for questioning and there made a free and voluntary confession. It is thus related by the Chief of Police: "He said he went down there, went up to the side of the house and looked through the window and saw her sitting in there, that he went on to the rear of the house and knocked on the door; she came to the door and he threw this gun on her and forced her out; that he took her out in the orchard and laid her down when he realized he was too close to the houses, he got up and took her over on the other side, where the body was found into the woods by a big stump, and laid her down and raped her. When he got up the lady told him if he would let her go home there would be nothing said about this and started back to the house and got a little ways back. He asked her if she was going to get a warrant and she says she was not, she was going to get a doctor and might call the law. When she said that he commenced beating her until he left her for dead and he went back to the house where he got a drink of water and got her purse and took $8.00 out and throwed the purse on the ground and went up the hill."

The confession was later reduced to writing by the Commonwealth's Attorney and signed and sworn to by the accused. It may be summarized. When Mrs. Hughes opened her door in response to his knock, he drew the gun on her and forced her into the orchard and raped her. When she declared that she would "call the law" he struck her several times with the butt of the rifle. He went into the house and got her pocket book, from which he took $8.00, and then threw it away. He then went home and burned his shirt. He had twice been convicted of a felony, forgery and confederating and banding together. In this affidavit the accused declared that it had been read over to him; that it was true and was being made freely without coercion, promise or inducement.

The officers had given testimony that both of these confessions had been voluntarily made and there was

no effort to show that they were obtained in an illegal manner.

The defendant did not testify or introduce any other witness.

The court submitted the case to the jury under instructions covering every phase of homicide. They are correct in every respect.

The thought has occurred that perhaps the defendant was entitled to an instruction to the effect that he could not be convicted upon his confession alone, as is laid down in Section 240, of the Criminal Code of Practice. In Smith v. Commonwealth, 153 Ky. 385, 155 S. W. 1125, 1126, the court approved an instruction which included a provision that the jury could not convict the defendant on his confession or statements to police officers, "unless such statements, if made, are corroborated by other evidence tending to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof." This instruction is published as Section 833, in Stanley's Instructions to Juries. We are of opinion that the form of that instruction is erroneous. The Criminal Code of Practice provision, Section 240, reads: "A confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that such an offense was committed."

This is unlike Section 241 relating to the corroboration of testimony of an accomplice. It merely requires other proof of corpus delicti. It has been repeatedly held that an instruction under Section 240 is not proper or required where the corpus delicti has been sufficiently established by other evidence than the defendant's confession, and that it is not necessary in order to sustain a conviction that there shall be other evidence tending to connect the accused with its commission, the language of the Criminal Code of Practice being sufficient. Among many cases may be cited Chapman v. Commonwealth, 112 S. W. 567, 33 Ky. Law Rep. 965; Frierson v. Commonwealth, 175 Ky. 684, 194 S. W. 914; Gilliam v. Commonwealth, 263 Ky. 342, 92 S.

W. 2d 346. Therefore, no error was committed in failing to give an instruction regarding the confession.

This young Negro has viciously, cruelly and brutally perverted the nature and violated the law of civilized man. But that very law has protected him from mob violence and given him a fair trial by a court which was very careful to preserve his every legal right, and his conviction was by a jury brought from a county other than that in which the crime was committed in order to avoid any local heat of passion. And we, as the court of last resort, have reviewed the proceeding with a sense of great responsibility. It is our opinion that the verdict was fully justified, and that the trial was without error.

The judgment is affirmed.